IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SEAN C. COLLINS,

          Plaintiff,

v.                                  CIVIL ACTION NO. 3:17-1902

LOWE'S HOME CENTERS, LLC, and
SCOTT HORSFIELD, individually and as
Manager of Lowe's Home Centers, LLC,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Partial Motion to Dismiss (ECF No. 9). As explained below, the Court **GRANTS, IN PART**, and **DENIES, IN PART**, Defendants' Partial Motion to Dismiss. Plaintiff's *Harless* claim, in Count IV, premised upon the WVHRA is **DISMISSED**. But, Plaintiff's *Harless* claim, also in Count IV, premised upon the FMLA remains viable.

Defendants requests the dismissal of Count IV of Plaintiff's five-count Complaint. Defendants contend that Count IV, claiming retaliatory discharge[1] in violation of West Virginia public policy (a "*Harless* claim"), should be dismissed for three reasons: 1) Plaintiff's complaint fails to provide the facts upon which a retaliatory discharge claim can be stated; 2) a retaliatory discharge claim cannot be based upon the Family and Medical Leave Act ("FMLA") and that West

---

[1] Note that "retaliatory discharge" and "wrongful discharge" are interchangeable in this area of the law. *See Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 718, 723 (W. Va. 2001) (using both terms in discussing the same cause of action). The two terms should be treated as synonymous, and the Court does so in this memorandum opinion and order.

Virginia has no substantial public policy that reflects the concerns of the FMLA; and 3) Plaintiff's retaliatory discharge claim is preempted by the statutory cause of action under the West Virginia Human Rights Act ("WVHRA").

**I. BACKGROUND**[2]

Plaintiff's claims arise out of an employment relationship gone-bad. For nearly 20 years, Plaintiff worked for Lowes Home Centers, LLC ("Defendant Lowes"), one of the defendants. *Compl.*, ECF No. 1, ¶ 8. Plaintiff received a litany of awards and commendations during his employment with Defendant Lowes, even earning the impressive title of "The Legend." *Id*. at ¶ 8-9.

Plaintiff developed this folkloric reputation despite personal challenges. Throughout his career, Plaintiff received treatment for diabetes and high blood pressure. *Id.* at ¶ 10. In addition to his own ailments, Plaintiff's wife suffered from her own serious health conditions. *Id.* at ¶ 12. Plaintiff had notified Defendants of his and his wife's heath concerns. *Id.* at ¶ 5, 43. In order to care for both himself and his wife, Plaintiff notified Defendants of his potential need to take some time off from work. *Id.* at ¶ 43. It is with this development that Plaintiff claims "The Legend" began to unravel.

During the course of his employment, Plaintiff claims that Defendant Scott Horsfield ("Defendant Horsfield") discriminated against Plaintiff. Believing, in good faith, that Defendant Horsfield, Plaintiff's manager, had discriminated against Plaintiff in a way he believed was in violation of West Virginia and federal law, Plaintiff reported these concerns to Defendant Lowes. *Id.* at ¶ 15, 16, 59. 60. Plaintiff claims that Defendant Lowes terminated his employment because

---

[2] This section includes only those facts relevant to the issues identified in the Partial Motion to Dismiss.

of Plaintiff's reporting of his concerns. *Id.* at ¶ 61, 64. Further, Plaintiff contends that the reason given by Defendant Lowes's for firing Plaintiff was pretextual. *Id.* at ¶ 18-22, 70.

Finding his termination objectionable, Plaintiff filed the complaint that commenced this action on March 16, 2017. Plaintiff's complaint contained five counts arising out of his employment and subsequent firing: (1) Interference With Rights Under the Family and Medical Leave Act; (2) Discrimination/Retaliation for Exercising Rights and Engaging in Protected conduct Under the Family and Medical Leave Act of 1993; (3) Disability Discrimination (under West Virginia Human Rights Act); (4) Retaliatory Discharge in Violation of West Virginia Public Policy; and (5) Violation of West Virginia Wage Payment and Collection Act. *See generally Compl.* In their Partial Motion to Dismiss, Defendants only moved to dismiss Count IV that claimed retaliatory discharge in violation of West Virginia public policy. *Defs.' Partial Mot. to Dismiss*, ECF No. 9, at ¶ 2. With the partial motion fully briefed, the matter is ready for adjudication.

**II. STANDARD OF REVIEW**

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must state plausible claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . . . " *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Finally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor . . . ." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal quotations omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)).

**III. DISCUSSION**

As noted above, Defendants challenge Count IV of Plaintiff's Complaint that states a claim for common law retaliatory discharge. In West Virginia, an employer's absolute right to discharge an at-will employee is tempered by common law considerations. *See* Syl. pt. 4, *Herbert J. Thomas Memorial Hosp. Ass'n v. Nutter* ("*Thomas*"), 795 S.E.2d 530 (W. Va. 2016). Where the employer's motivation for termination contravenes a "substantial public policy principal," then the employee has a cause of action for retaliatory discharge in violation of public policy (a "*Harless* claim"). *Id.*; *see also Harless v. First Nat'l Bank*, 246 S.E.2d 270, 275 (W. Va. 1978). To establish substantial public policy for a *Harless* claim, courts should "look to established precepts in [West Virginia's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions.

*Williamson v. Greene*, 490 S.E.2d 23, 31 (W. Va. 1997) (quoting Syl. pt. 2, *Birthisel v. Tri-Cities Helath Servs. Corp.*, 424 S.E.2d 606 (W. Va. 1992)). The term "substantial public policy" is intended to "exclude claims that are based on insubstantial considerations." *Birthisel v. Tri-Cities Helath Servs. Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992). "Substantial public policy" also encapsulates the implication that the public policy principal provides both specific and recognized guidance for employers. *Id.* The existence of a substantial public policy for a *Harless* claim is a question of law, not one of fact. *Thomas*, 795 S.E.2d at 541 (citing Syl. pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111 (W. Va. 1984)).

The Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court") has provided four elements necessary to state a claim for retaliatory discharge:

> (1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);
> (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);
> (3) That plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* elements);
> (4) The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* (citations omitted) (italicization original) (providing these factors as a summary of the four factors announced by Justice Davis in *Feliciano v. 7-Eleven, Inc.*).

Plaintiff has asserted two *Harless* claims, one premised upon the public policy emanating from the WVHRA, and the other premised upon a potential public policy derived from the FMLA. *Compl.* ¶ 58, 59, 60, 64, 66. With the background of a retaliatory discharge claim laid out, the Court will examine each of the Plaintiff's *Harless* claims in turn.

### a. The WVHRA supersedes one of Plaintiff's *Harless* claims.

Plaintiff bases the first of his *Harless* claims upon the substantial public policy announced in the WVHRA. *Compl.* ¶ 59, 60, 64, 66. Defendants contend that this *Harless* claim should be dismissed because it is supplanted by a statutory claim arising under the WVHRA. . *Defs.' Partial Mot. to Dismiss*, at ¶ 9. Defendants base this contention upon a series of decisions from district courts in West Virginia. *Id.*; *see, e.g., Guevara v. K-Mart Corp.*, 629 F.Supp. 1189, 1192 (S.D.W. Va. 1986); *Burgess v. Gateway Comm'ns Inc.-WOWK TV*, 984 F.Supp. 980, 983 (S.D.W. Va. 1997); *Knox v. Wheeling-Pittsburgh Steel Corp.*, 899 F.Supp. 1529, 1535-36 (N.D.W. Va. 1995). Plaintiff, citing to this Court's decision in *Vandevander v. Verizon Wireless, LCC*, 149 F.Supp.3d 724 (S.D.W. Va. 2016), argues that he may pursue the common law *Harless* claim, despite also having statutory remedies under the WVHRA. *Pl.'s Resp. Mem. in Opp'n to Defs.' Mot. to Dismiss*, ECF No. 12, at 6-7. Notwithstanding Plaintiff's seemingly apt application of the logical reasoning from *Vandevander*, this Court agrees with Defendants because of the clear and un-repudiated precedent of this District.

Just this year, this Court examined the precise issue over which the current parties disagree. In *Adkins v. Cello P'ship, Inc.*, this Court had to decide whether a claim under the WVHRA supersedes and replaces a *Harless* claim that emanates from the public policy announced in the WVHRA, when the same facts underlie both the WVHRA claim and the *Harless* claim. No. 3:17-cv-2772, 2017 WL 2961377, at *2-4 (S.D.W. Va. July 11, 2017) (slip op.). In that case, the Court considered arguments nearly identical to those made by the parties in this matter. The Court discussed both the continuing precedent in this District, as well as the developments in the West Virginia Supreme Court's jurisprudence. *See id.*

Specifically, this Court addressed the application of its *Vandevander* decision to the question of whether the remedies provided in the WVHRA supersede a *Harless* claim that is based upon the public policy embodied by the WVHRA. *See id.* at *3. Like the plaintiff in this case, the plaintiff in *Adkins* argued that this Court's opinion in *Vandevander* supported the proposition that a plaintiff could maintain a *Harless* claim, even when a plaintiff also had an actionable statutory claim. *See id.*

In *Vandevander*, this Court found that the FMLA does not preempt a state law claim, such as a *Harless* claim, "even [when that] claim[] aris[es] out of the same transaction or occurrence as an FMLA claim." *Vandevander*, 149 F.Supp.3d at 728. The Court in *Adkins* distinguished the circumstances and reasoning of *Vandevander*. The Court provided that *Vandevander* dealt with the FMLA, a statute that by its express terms does not preempt state law claims. *See Adkins*, 2017 WL 2961377, at *3; *see also Vandevander*, 149 F.Supp.3d at 728. The WVHRA, on the other hand, creates both "the anti-discriminatory public policy for the state and a private cause of action for citizens to seek remedies when the WVHRA is violated." *Adkins*, 2017 WL 2961377, at *3. The Court reasoned that in light of the WVHRA's creation of both the public policy and a cause of action for its violation, a *Harless* claim was duplicative. *See id.* at *4. The Court noted that the West Virginia Supreme Court created the *Harless* claim for wrongful terminations where the fired employee did not have any cause of action under state law to enforce a violated public policy. *See id.; see also Harless*, 246 S.E.2 at 276. But, where the act of the state legislature provided both the policy and a cause of action, the *Harless* concerns no longer existed. An employee terminated in violation of the public policy of the WVHRA has a statutory cause of action, rendering a *Harless*

claim unnecessary. Thus, the *Harless* claim succumbed to the state statutory cause of action provided in the WVHRA.[3] *See id.*

Ultimately, this Court in *Adkins* concluded that "[a]lthough courts have recognized exceptions and limitations, until the precedent of this District is disavowed, this Court will dismiss common law claims when corresponding WVHRA claims remain actionable against the defendant." *Id.* at *3.

The law has not changed since this Court's decision in *Adkins*. Although the West Virginia Supreme Court could reverse the course of this District's jurisprudence on this issue, it has yet to do so explicitly. Accordingly, this Court must continue the travel the well-worn path of precedent. Plaintiff's *Harless* claim, premised upon the substantial public policy announced in the WVHRA, fails as a matter of law.

**b. Plaintiff can state a *Harless* claim based upon public policy announced in the FMLA.**

Defendants also contend that the FMLA cannot support Plaintiff's *Harless* claim. *Defs.' Partial Mot. to Dismiss*, at ¶ 4. Defendants claim that West Virginia courts have never recognized federal statutory law, including the FMLA, as embodying West Virginia public policy for a *Harless* claim. *Id.* Additionally, Defendants argue that the Plaintiff cannot demonstrate the establishment of any West Virginia public policy reflecting the concerns embodied in the FLMA. *Defs.' Partial Mot. to Dismiss*, at ¶ 6.

West Virginia courts have reiterated the importance of judicial restraint in the announcing of public policy. *See Washington v. Union Carbide Corp.*, 870 F.2d 957, 962-63 (4th Cir. 1989)

---

[3] Note that where the WVHRA does not apply to an employer, a plaintiff may pursue a *Harless* claim to remedy a violation of the public policy announced in the statute. *See Williamson v. Greene*, 490 S.E.2d 23, 33 (W. Va. 1997).

(reflecting the importance of proceeding with "great caution" and citing to West Virginia cases). Further, federal courts in this District have recognized the imperativeness of restraint when analyzing the existence of a certain public policy. *See Wiley v. Asplundh Tree Expert Co.*, 4 F.Supp.3d 840, 845-46 (S.D.W. Va. 2014). However, even in light of this mandated restraint, the Court disagrees with Defendants.

On this issue, as with the issue discussed in the section above, district courts in West Virginia have spoken. Both courts in this District, as well as those in our sister district to the north, have found that that federal statutory law can embody public policy for a *Harless* claim. *See Bartos v. PDC Energy, Inc.*, No. 1:16-cv-167, 2017 WL 3224457, at *5, *7-8 (N.D.W. Va. July 28, 2017); *Vandevander*, 149 F.Supp.3d at 729-31; *Brown v. Tethys Bioscience, Inc.*, No. 1:10-1245, 2013 WL 65456, at *10 (S.D.W. Va. Jan. 4, 2013) (Faber, S.J.); *Walker v. West Publ'g Corp.*, No. 5:09-cv-723, 2011 WL 3607960, at *8-9 (S.D.W. Va. Aug. 12, 2011) (Burger, J.); *Williams v. Basic Contracting Servs., Inc.*, No. 5:09-cv-49, 2010 WL 3244888, at *9-10 (S.D.W. Va. Aug. 17, 2010) (Johnston, J.); *see also Boone v. MountainMade Found.*, 857 F.Supp.2d 111, 114-16 (D.D.C 2012) (finding that the plaintiff could sustain a West Virginia *Harless* claim upon the substantial public policy embodied in the False Claims Act).

Citations to the decisions of the West Virginia Supreme Court underlie the findings of these courts. Although the West Virginia Supreme Court has not explicitly found a federal statue to announce public policy for a *Harless* claim, it has laid the foundation for the district courts to reach that conclusion. In *Feliciano v. 7-Eleven, Inc.*, the West Virginia Supreme Court provided that, as one of the four elements of *Harless* analysis, public policy must have "existed and [be] manifested in a state or *federal* constitution, statute or administrative regulation, or in the common law." *Feliciano*, 559 S.E.2d at 723 (emphasis added). This suggests that although the requirements for

deriving substantial public policy for a *Harless* claim may be strict, the body of law from which to draw the potential policies is vast. *See Williams*, 2010 WL 3244888, at *9. Indeed, the West Virginia Supreme Court has continued to provide that *federal* and state law can substantiate the policies for a *Harless* claim. *See Thomas*, 795 S.E.2d at 541 ("That a clear public policy existed and was manifested in a state or federal constitution, statutory or administrative regulation, or in the common law (the clarity element).")

As noted, the West Virginia Supreme Court has made clear that courts are to approach the identification of substantial public policy with great caution. *Washington*, 870 F.2d at 962-63. Behind that counsel is the concern that *Harless* claims will be the exception to swallow the rule. To find nearly every public policy to be substantial for a *Harless* claim would render the "substantiality" of the policy meaningless. *See Birthisel*, 424 S.E.2d at 612. Courts' restrained approach, in conjunction with the strenuous dictates for identifying substantial public policy, protect *Harless* and its progeny from ballooning into a catchall cause of action. With the dualities of restraint and substantiality protecting the gates to *Harless* relief, Court's may consider whether policies from a broad body of law meet the requirements for *Harless* public policy.

In addition to generally providing for an inspection of federal law to identify *Harless* public policy, the West Virginia Supreme Court's citations are telling. The State's high court has approvingly cited to cases where other courts have found public policy in federal statutes and regulations to support state claims, even going so far as to assert that these courts used "similar approaches" to that of West Virginia. *See, e.g.*, *Kanagy v. Fiesta Salons*, 541 S.E.2d 616, 620 (W. Va. 2000) (citing *Meury v. Connie Kalitta Servs./Am. Int'l Airways*, 181 F.3d 102 (6th Cir. 1999) (finding public policy premised upon federal aviation regulations for a *Harless*-type claim under Michigan law where safety violations were reported to the Federal Aviation Authority); *Barela v.*

*C.R. England & Sons, Inc.*, 197 F.3d 1313 (10th Cir. 1999) (relying on both state and federal commercial trucking regulations in finding that the plaintiff asserted a clear and substantial public policy under Utah law where the plaintiff had raised concerns about violations); *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo. Ct. App. 1985) (finding a wrongful discharge claim existed where the plaintiff reported violations of federal eyeglass testing regulations); *Allum v. Valley Bank*, 970 P.2d 1062 (Nev. 1998) (finding public policy based upon Federal Housing Administration rules and regulations for a Nevada employee who refused to process loans in violation of those laws); *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 447 (N.C. 1989) (recognizing public policy based upon federal Department of Transportation regulations regarding hours of permitted driving where employer discharged an employee for the employee's failure to exceed the hours permitted under those regulations)). As another court in this District as clarified, "it is evident that West Virginia law authorizes the use of federal law to serve as the basis of a wrongful discharge suit." *Williams*, 2010 WL 3244888, at *9. Proceeding in light of this jurisprudence, the Court must now consider whether the FMLA sufficiently states substantial public policy upon which Plaintiff can maintain a *Harless* claim.

On this question, the Court is compelled by the decisions of this District, and our sister district, to find that the FMLA does embody substantial public policy upon which Plaintiff can maintain a *Harless* claim. Two cases from district courts in West Virginia counsel for this finding.

The first case, *Vandevander v. Verizon Wireless, LLC*, was before this Court. In that case, like in this one, the plaintiff plead a *Harless* claim premised upon the public policy of the FMLA. *Vandevander*, 149 F.Supp.3d at 727. The Defendant had moved to dismiss that claim, for among other reasons, because "the FMLA provides the exclusive remedy in [that] case, and because the [West Virginia Supreme Court] would not permit this state common law claim to proceed." *Id.*

The plaintiff in *Vandevander* even asked this Court to certify a question to the West Virginia Supreme Court regarding whether a *Harless* claim could "arise from a violation of the policies reflected in the FMLA." *Id.* The Court reviewed the West Virginia Supreme Court's case law regarding the recognition of substantial public policy and found the certification of a question unnecessary. *Id.*

Instead, the Court held that "the FMLA provides a substantial public policy that could support a West Virginia" *Harless* claim. *Id.* at 729. The Court reached this holding after an extensive application of the requirements imposed by the West Virginia Supreme Court for a court to identify a substantial public policy. *See id.* at 728-30 (providing the strict guidelines established by West Virginia courts and applying them to the FMLA). Ultimately, the Court found that the FMLA provides

> specific guidance to a reasonable person, and subjecting an employer to liability based on violating the FMLA would not expose the employer to liability for violating a standard too general to provide any specific guidance or so vague that it is subject to different interpretation. On the contrary, the FMLA's requirement at issue in this case provide clear and unequivocal standard for employers to follow . . . .

*Id.* at 730. Following this thorough review, the Court concluded that the plaintiff had properly plead the FMLA has establishing the public policy upon which his *Harless* claim could proceed.

Defendants claim that *Vandevander* is not conclusive on the issue presently before this Court. As support for this proposition, Defendants cite to footnote five of the *Vandevander* opinion, which notes: "The parties have not discussed whether the FMLA, as a federal law, is a proper source of policy for purposes of a West Virginia common law retaliatory discharge claim. Therefore the Court does not discuss this." *Defs.' Reply*, ECF No. 13, at 2 (citing *Vandevander*, 149 F.Supp.3d at 730 n.5). Defendants claim that the question presently before this Court is the

same one that the parties had not briefed, and that the Court did not discuss, in *Vandevander*. Based upon that, Defendants argue that *Vandevander* should not, and does not, dictate the finding that Plaintiff can proceed with a *Harless* claim premised upon the public policy embodied in the FMLA. Although Defendants are correct that the Court was silent on whether federal law could properly support public policy for a *Harless* claim, the Defendants are incorrect that footnote five of *Vandevander* negates the precedential value of that decision.

In this opinion, the Court has addressed the analysis that the parties had failed to identify in *Vandevander*. Footnote five of *Vandevander* addresses the issue of whether federal law can supply the public policy for a *Harless* claim, generally. *See Vandevander*, 149 F.Supp.3d. at 730 n.5. This Court has answered that question in the paragraphs above. *See supra* pp. 9-11. The failure of the lawyers to identify and brief the issue in *Vandevander* does not require this Court to ignore that decision. This is especially true because the counsel for both sides in this matter also appeared in *Vandevander*. Where the Court has now fully analyzed the issue left untouched by counsel in a previous case, the result in *Vandevander* supports the Court's conclusion in this case that the FMLA provides a substantial public policy upon which Plaintiff may state a *Harless* claim.

The second case compelling this Court's finding arises out of our sister district, the Northern District of West Virginia. In *Bartos v. PDC Energy, Inc.*, the parties presented Chief Judge Groh with substantial similar arguments to those made in this case. 2017 WL 3224457, at *8. Chief Judge Groh, after a review of the West Virginia Supreme Court's, and this District's, *Harless* jurisprudence, found this Court's reasoning in *Vandevander* persuasive. *See id.* at *4-5, *8. The *Bartos* court found that the FMLA provided the plaintiff with the substantial public policy that allowed her *Harless* claim to survive summary judgment. *Id.*

Based upon the precedent in both this District and the Northern District, as well as an independent review of the relevant case law of West Virginia courts, this Court finds that the FMLA provides the substantial public policy upon which Plaintiff may state a *Harless* claim.

As with this Court's discussion regarding the WVHRA supplanting Plaintiff's other *Harless* claim, the West Virginia Supreme Court can alter the course taken by the federal district courts on this issue. *See supra* pp. 6-8. To this point, the high court has not done so. Accordingly, this Court's finding is permissible and in-line with the precedent of both this District and our sister district.

### c. The FMLA does not preempt Plaintiff's FMLA-based *Harless* claim.

Defendants also argue that if Plaintiff can state a *Harless* claim premised upon the public policy reflected in the FMLA, then the FMLA preempts that *Harless* claim. *Defs.' Mem. of Law in Supp. of Mot. to Dismiss*, ECF No. 10, at 8 n.3; *Defs.' Reply*, at 8 n.2. In doing so, Defendants "request[] that this Court reconsider its decision in *Vandevander* and find that Plaintiff is limited to a claim under the FMLA." *Defs.' Reply*, at 8 n.2. Defendants, as evidenced by their request, recognize that this Court's decision in *Vandevander* dictates the outcome of this issue if this Court continues to apply that case. Despite the invitation to break with recent precedent, the Court will abide by the conclusion in *Vandevander*.

In *Vandevander*, this Court examined whether the FMLA provides the "exclusive remedy," preempting a *Harless* claim based upon the public policy reflected in the FMLA. *Vandevander*, 149 F.Supp.3d at 728. The Court first examined the language of the FMLA statute. By its own terms, the FMLA does not preempt state law claims. *Id.* (citing 29 U.S.C. § 2651). Indeed the language of the statute indicates Congress' "general intent to prevent the FMLA from preempting state law claims." *Id.*

In addition to noting the language of, and Congressional intent revealed by, the statute, the Court also focused upon the treatment of the FMLA by courts within the Fourth Circuit. *See id.* (citing *Davis v. Cabela's Inc.*, No. 07-88, 2008 WL 183717, at *2 (N.D.W. Va. Jan. 18, 2008) (finding that the FMLA by its own language does not preempt related state law claims); *Findlay v. PHE, Inc.*, No. 99-54, 1999 WL 1939246, at *3 (M.D.N.C Apr. 16, 1999) (same and finding that Congress did not attempt to "occupy the field"); *Danfelt v. Bd. of Cty. Comm'rs of Washington Cty.*, 998 F.Supp. 606, 611 (D.Md. 1998) (holding that the FMLA does not preempt a Maryland wrongful discharge claim because the FMLA lacks evidence of Congress' intent to preempt the field of state tort law)). The *Vandevander* decision also noted a variety of other courts outside of our circuit that have reached a similar conclusion. *See id.* at 728 & n.1 (citations omitted). Based upon this analysis, the Court held that "the FMLA does not preempt state law claims, even those claims arising out of the same transaction or occurrence as an FMLA claim." *Id.* at 728. Specifically, the Court found that the FMLA does not preempt a *Harless* claim. *Id.*

The Court finds that both the *Vandevander* analysis and conclusion remain sound. Further, federal courts both inside and outside of this state have continued to reinforce the validity of the *Vandevander* answer to the question of whether the FMLA preempts a *Harless* claim. *See Bartos*, 2017 WL 3224457, at *5; *Adkins*, 2017 WL 2961377, at *3 (distinguishing the exclusivity of the WVHRA remedy from the express lack of preemptive effect of FMLA on *Harless* claims); *Packett v. Univ. of Maryland Med. Ctr.*, No. RDB-17-1630, 2017 WL 5903759, at *3 (D. Md. Nov. 30, 2017) (slip op.) (citing *Vandevander* among other cases from district courts in the Fourth Circuit) ("[T]his Court and other district courts in the Fourth Circuit have held that the FMLA unambiguously does *not* preempt state law claims." (emphasis original)).

In making its footnote-argument for FMLA preemption of Plaintiff's *Harless* claim, Defendants cite to a litany of district court cases. *See Defs.' Mem. of Law in Supp. of Mot. to Dismiss*, at 8 n.3; *Defs.' Reply*, at 8 n.2. However, only three of the eleven cases cited by Defendants originate from courts within our circuit. *See Defs.' Reply*, at 8 n.2. One of those three cases is *Vandevander*, which directly refutes Defendants' contentions. Neither of the other two cases from district courts in this circuit directly deal with the issue currently before the Court. *See Smith v. Bayer Material Sci., LLC*, No. 5:12CV171, 2013 WL 4039946, at *3 (N.D.W. Va. Aug. 7, 2013) (considering on a motion to remand whether reference to the FMLA in a complaint was sufficient to invoke federal question subject matter jurisdiction); *Joliffe v. Mitchell*, 971 F.Supp. 1039, 1044-45 (W.D. Va. 1997) (analyzing whether the plaintiff could maintain a §1983 claim premised upon the FMLA as the source of substantive rights). In the best light for Defendants, these cases deal with inapposite legal issues that render them unhelpful in analyzing the currently pending question before the Court. In the worst light, these cases actually detract from Defendants' argument and support this Court's conclusion.

Of most note, Defendants cite *Smith v. Bayer Material Sci., LLC*, in which the District Court for the Northern District of West Virginia considered the plaintiff's motion to remand. 2013 WL 4039946, at *1. The plaintiff, who originally filed the suit in state court, had alleged a series of state law claims arising from the termination of his employment. *Id.* Within the complaint, the plaintiff had mentioned violations of the FMLA. *Id.* at *2. The defendant argued that this constituted a claim arising under federal law. *Id.* The plaintiff, however, insisted that the FMLA discussion was only factual support for his state law, negligent hiring claim. *Id.* at *1-2. Therefore, the Court in *Smith* dealt with whether the court had federal question subject matter jurisdiction.

In the portion of the opinion cited by Defendants, the *Smith* court addressed whether the plaintiff's mentioning of an FMLA violation could support federal jurisdiction in the case. *Id.* at *3-4. Ultimately, the court found it could not and remanded the case. *Id.* at *4. The court reasoned that the plaintiff had not alleged a claim under the FMLA, but had instead stated the FMLA violation as a fact supportive of her negligent hiring claim *Id.* Additionally, the court did not believe that the question regarding whether the allegedly negligent hire violated the FMLA was a sufficiently essential federal question to the plaintiff's claim. *Id.* Thus, the actual issue examined by the court does not address the question currently facing this Court.

Yet, the *Smith* court's reasoning and citations, if applicable at all, support this Court's conclusion that the FMLA does not preempt a *Harless* claim. The *Smith* court cited to two cases from federal district courts in West Virginia: *King v. Cardinal Health 411, Inc.*, No. 5:10cv112, 2011 WL 43030 (N.D.W. Va. Jan. 6, 2011) and *Pudder v. Wal-Mart*, 2:11cv970, 2012 U.S. Dist. LEXIS 61293 (S.D.W. Va. May 2, 2012). *See Smith*, 2013 WL 4039946, at *3-4. Both of these cases suggest support for this Court's conclusion in this case.

In *Pudder*, the plaintiff stated a *Harless*-type claim upon, in part, the FMLA. *Id.* at *4. Likewise, in *King*, the plaintiff appeared to state both a *Harless*-type claim based upon the FMLA and a claim arising under the FMLA. *See King*, 2011 WL 43030, at *1-3 (explaining that the plaintiff original failed to cite federal law in her *Harless*-type claim, but later explained in a response to a motion to dismiss that was denied, that the FMLA was the source of the public policy for the claim). In neither case did the court mention or discuss FMLA preemption, or any impermissibility of stating a common law wrongful termination claim upon FMLA public policy. Without doubt, the supportive weight of these cases for this Court's conclusion on the present issue

-17-

is merely minor and suggestive. However, this represents the only potentially germane application of the *Smith* case to the case currently before this Court.

Defendants attempt to cite *Smith* for its reference to a case out of the Eastern District of Missouri, where the court found that the exclusive remedy for a FMLA violation was under the statute and not a common law wrongful discharge claim. *Smith*, 2013 WL 4039946, at *3-4 (citing *Anderson v. Shade Tree Servs., Co.*, No. 4:12CV1066ERW, 2012 WL 3288120 (E.D. Mo. Aug. 10, 2012)). However, the view of federal courts in this state and federal circuit differs from that of the courts in Eastern District of Missouri. *Compare Bartos*, 2017 WL 3224457, at *5; *Packett*, 2017 WL 5903759, at *3; *Vandevander*, 149 F.Supp.3d at 728; *with Anderson v. Shade Tree Servs., Co.*, No. 4:12CV1066ERW, 2012 WL 3288120 (E.D. Mo. Aug. 10, 2012). That a district court from a different state, in a different federal circuit, reaches a different conclusion from the well-reasoned one of this Court does not necessitate that this Court must now forsake its jurisprudence.

In sum, Defendants' footnote citations do not persuade this Court to reverse course and abandon its precedent. Therefore, the Court finds that the FMLA does not preempt Plaintiff's *Harless* claim.

Because one of Plaintiff's *Harless* claims survives, as a matter of law, the Court will proceed to examine whether Plaintiff has plead sufficient factual allegations to maintain a *Harless* claim.

### d. Plaintiff's Complaint provides sufficient factual basis to state a *Harless* claim.

Defendants argue Plaintiff's Complaint has insufficient factual allegations to maintain a *Harless* claim. The Court, however, disagrees. At this stage in the proceedings, the Court must

assume the factual allegations contained in the complaint are true. Taking them as true, the facts alleged support a *Harless* claim.

Plaintiff bases his *Harless* claim upon a few central facts. First, Plaintiff claims that he provided notice to Defendants about both his and his wife's health conditions and the potential need to take time off to address these illnesses. *Compl.* ¶ 5, 43, 58. Second, Plaintiff asserts that based upon this notification and request, he formed the good faith belief that Defendant Horsefield was discriminating against him in violation of West Virginia law and the FMLA. *Id.* at ¶ 59, 60. Third, Plaintiff states that he reported this good faith belief to Defendant Lowes's management. *Id.* at ¶ 59. Fourth, as a result of this reporting, he was fired, and that Defendants' stated reason for the firing was a mere pretext. *Id.* at ¶ 68-70. Fifth, as a result of this termination, Plaintiff suffered damages. *Id.* at ¶ 71.

Further, Plaintiff properly claimed that this termination violated the substantial public policy announced in the FMLA. *Id.* at ¶ 64, 66. Based upon the public policy embodied by the FMLA, Plaintiff can maintain a *Harless* claim given the facts alleged. *See supra* pp. 8-18.

Plaintiff asserts both the necessary facts and law to survive the 12(b)(6) phase. Plaintiff properly cites to the FMLA as a substantial public policy violated by his firing. *Compl.* ¶ 58, 60, 62, 64, 66, 73. Supporting the claim, Plaintiff provides facts that plausibly demonstrate how Defendants acted contrary to that substantial public policy principal. Plaintiff identifies his and his wife's disability as the relevant circumstance that gave rise to FMLA concern. *Compl.* ¶ 58. Further, Plaintiff asserts that Defendants retaliated against him for attempting to report what he believed was conduct violative of the FMLA. *Id.* at ¶ 58, 60, 62, 64, 66, 73. Therefore, in asserting that Plaintiff reported suspected unlawful practices, that Defendant terminated Plaintiff due to that

reporting, and that Plaintiff suffered damages in the form of lost wages and general trauma, Plaintiff has provided sufficient facts to survive this stage of the proceedings.

**IV. Conclusion**

Based upon the forgoing, the Court finds that Plaintiff has stated both sufficient factual allegations and a proper legal foundation for one of his *Harless* claims to survive the motion to dismiss stage. The *Harless* claim based upon the public policy reflected in the FMLA may proceed, but the *Harless* claim premised upon the WVHRA fails a matter of law.

Accordingly, the Court **GRANTS, IN PART**, Defendants' Partial Motion to Dismiss and **DISMISSES** Plaintiff's *Harless* claim referencing the WVHRA. The Court also **DENIES, IN PART**, Defendants' Partial Motion to Dismiss, and will allow Plaintiff's *Harless* claim referencing the FMLA to continue.

ENTER: December 7, 2017

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE